OPINION OF THE COURT
Per Curiam.
Judgment, entered on or about September 9, 2008, reversed, with $30 costs, and complaint dismissed.
Upon the trial of this action to recover payment of first-party no-fault benefits arising from plaintiffs performance of four separate MRIs of plaintiffs assignors, Civil Court awarded judgment in plaintiffs favor in the principal amount of $4,390.16. The principal defense advanced by defendant insurer at trial was that plaintiffs claims were premature because plaintiff had failed to respond to defendant’s verification requests (see 11 NYCRR 65-3.5 [b]; New York & Presbyt. Hosp. v Progressive Cas. Ins. Co., 5 AD3d 568 [2004]). Upon review of the record, we conclude that defendant presented evidence of its office mailing practice sufficient to establish that the verification requests had been mailed and presumably received by plaintiff. In this posture, and in the absence of any claim or showing that plaintiff ever responded to defendant’s timely requests for verification, we reverse the judgment appealed from and dismiss the action as premature.
At trial, defendant presented the testimony of an experienced claims examiner, Jennifer Piccolo, who both personally prepared the initial and follow-up verification requests here at issue and possessed firsthand knowledge of defendant’s standard office mailing practice. The witness’s credible and consistent account of the mailing procedures generally followed by defendant, including how the mail was systematically picked up during the workday, when it would “go out,” and what steps would be taken if a verification letter was returned as undeliverable (an event which, the witness noted, did not occur here), “obviated the necessity of producing a witness with personal knowledge of the actual mailing” of defendant’s verification letters (see Badio *15 v Liberty Mut. Fire Ins. Co., 12 AD3d 229, 230 [2004]). Nor was it incumbent upon defendant to produce a witness, such as a mail clerk or other clerical employee, whose duty it was to ensure compliance with its mailing procedures or who possessed personal knowledge of such compliance (see Delta Diagnostic Radiology, P.C. v Chubb Group of Ins., 17 Misc 3d 16 [2007]).
Having established its routine and reasonable office practice, defendant met its burden to establish that the verification letters were mailed to (and presumably received by) plaintiff. Plaintiff not only failed to produce any countervailing evidence to rebut the presumption of receipt, but has not at any time affirmatively denied receipt of the verification letters.
Before concluding, we would be remiss in failing to note that the facts and circumstances of this action do much to illustrate the disturbing reality that first-party no-fault benefits litigation has become the antithesis of what was supposed to be an expeditious and simplified process for the payment of medical costs for injuries sustained in motor vehicle accidents (see Walton v Lumbermens Mut. Cas. Co., 88 NY2d 211, 214 [1996]). Too often, lawsuits with a value akin to a small claims action become bogged down by an insistence by one party or another that mailing of routine forms be established with scientific precision, asking judges, already burdened to the breaking point with the veritable legion of no-fault cases overflowing from our court dockets (while very able arbitrators remain underutilized), to require multiple witnesses to be summoned to the courthouse, merely to establish a presumption of mailing, even in the absence of an express denial of receipt of the disputed correspondence. Unfortunately, this class of cases has spawned a body of “gotcha” jurisprudence, marked by a near manic preoccupation with form over substance.
How we have reached this sorry state is of little moment. Perhaps all branches of government need to call a “time out” and, working together, endeavor to construct a workable process to achieve what the framers of the no-fault statute had in mind when they sought to establish a simplified and expeditious process to reimburse those of our citizenry injured in automobile accidents. For sure, the system now in place is not achieving that laudable aim.